# Melizet's Appeal.

1. In the 11th section of the Act of 11th April, 1848, "to secure the rights of married women," it is enacted that the 11th section of the Act of 8th April, 1833, *relating to last wills and testaments,* in which it is provided, "That nothing herein contained shall deprive the widow of her choice either of *dower,* or of the estate or property so devised or bequeathed," shall not be construed to deprive the widow of the testator, in case she elects not to take under the will of her husband, of her share of his personal estate under the intestate laws; but that she may take her choice either of the bequest or devise or of her share of the personal estate under the intestate laws: It was *held,* in the case of a person dying since the Act of 1848, leaving a will which was made before its passage, that his widow, by electing *not* to take under the will, is entitled to the share of his *personal estate* provided for her by the intestate laws: whether she is *confined* by the Act of 1848, by such election, *to the personal estate,* not decided.

17    449
23 SC  ²557
17     ¯449
32 SC  ³459

2. The widow, being therefore *interested* in the personal estate of her deceased husband, has a right, by the 22d section of the Act of 29th March, 1832, relating to Orphans' Courts, to the exhibition of a fair account thereof by the executor.

3. There is no constitutional provision guarding the common law right of dower; it is not part of the marriage contract, but results from the operation of laws existing at the time of the husband's death. The Act of 1848 is constitutional as respects marriages contracted *before* its passage, where the death of the husband is subsequent thereto.

4. The 11th section of the Act of 1848 is cumulative, or in addition to the Act of 8th April, 1833.

APPEAL by Antoinette Melizet from the decree of the Orphans' Court of *Philadelphia county*.

John M. Melizet, of the city of Philadelphia, made his will, dated July 1, 1844. He died in Philadelphia on the 26th March, 1850. His will was proved on the 22d April, 1850, and letters testamentary were issued to John B. Roudet, the nephew of the deceased, who was named in the will as one of the executors and trustees under the will. He devised his *personal* estate, one-half to his brother, one-third to one of his sisters in Philadelphia, and the remainder to another sister residing in France.

As to his real estate, he directed that his executors should be the trustees of it, and the net annual income to be divided, viz.: one-third to his wife Antoinette, then divorced *a mensa et thoro*, and living apart from him, during her natural life; the other two-thirds between his brother and his two sisters, the brother to receive one-half. After the death of his wife the trust to be at an end, and the real estate then to be divided between the brother and sisters, in the proportion mentioned concerning his personal estate. In the event of the death of the brother and sisters before him, their children to take.

Roudet, as executor, on the 20th May, 1850, filed an inventory and appraisement of personal estate exceeding $3300. He also filed a statement of certain real estate, which latter was estimated at above $65,000.

The petition of Antoinette, the widow of deceased, was on the 18th October, 1850, presented to the Orphans' Court, in which it was stated, *inter alia*, that the testator died without issue; that shortly before his death the decedent held in his own name a quantity of stock in various institutions of considerable value, and designating other stocks than those mentioned in the inventory. It was alleged that the petitioner lived apart from him, and was for several years past in the receipt of a monthly allowance under the decree of the Court of Common Pleas. The belief was expressed that the stocks mentioned were disposed of by the testator shortly before his decease, with the knowledge and co-operation of Roudet, and with the design of preventing the petitioner from enforcing her rights in regard to them. It was also alleged

[Melizet's Appeal.]

that she had reason to believe that the testator was seised of other real estate than that mentioned in the statement filed.

She prayed the court to order a citation to Roudet to appear and answer, and that he be required to give security, or be dismissed. She stated that she had not done any act to signify an election to take under the will, or to waive any right to which she would by law be entitled; that she desired first to procure the information necessary to a judicious choice, whether to accept or decline the provisions of the will.

An answer by the executor was filed, denying that the testator shortly before his death held the stocks specified in the petition, and alleging that the stocks were transferred on the books of the institutions, and open to inspection; that none of the transfers were made by him or known to him until after they had been made, and that the latest transfer was made in September, 1846; and that no personal property has come to his hands or knowledge, other than that stated in the inventory. That the testator died seised of no other real estate, except of a claim to some land in Florida, believed to be worthless.

He submitted, by way of plea or demurrer to the petition, that the petitioner had no right in law to maintain it.

The petitioner thereupon applied for the appointment of an auditor to take testimony and report the facts to the court. But on 28th December, 1850, the following order was made, viz. :—

"It appearing to the court, that the petitioner is not a party in interest, or as such entitled to the remedy prayed for, it is ordered that the petition be dismissed."

The petitioner appealed to the Supreme Court, and exceptions were filed, viz. : The court below erred, 1st. In dismissing the petition. 2d. In deciding that the petitioner was not a party in interest, or entitled to the remedy prayed for. 3d. In refusing a reference for the purpose of taking testimony.

The Act of 1833, "relating to last wills and testaments, "section 11 (*Purdon* 1169), provides:

"A devise or bequest, by a husband to his wife, of any portion of his estate or property, shall be deemed and taken to be in lieu and bar of her dower in the estate of such testator, in like manner as if it were so expressed in the will, unless such testator shall in his will declare otherwise: provided that nothing herein contained shall deprive the widow of her choice, either of dower, or of the estate or property so devised or bequeathed."

In the 11th section of the Act of 11th April, 1848, it is provided that the eleventh section of the Act of 8th April, 1833, entitled " An Act relating to last wills and testaments," shall not be construed to deprive the widow of the testator, in case she elects not to take under the last will and testament of her husband, of her share of the personal estate of her husband under the intestate

laws of this Commonwealth, but that the said widow may take her choice either of the bequest or devise made to her under any last will and testament, or of her share of the personal estate under the intestate laws aforesaid."

*Williams* and *Guillou* for appellant.—The petition was presented under the 22d section of the Act of 29th March, 1832 (Orphans' Court, *Purdon,* 888), in which it is provided that an executor not filing a true inventory, may be removed on the application " of any person interested." Since the Act of 1848 the widow is interested, notwithstanding all of the testator's personal estate has been disposed of by the will. The Act of 1833 allowed to the widow an election to take the devise or bequest under the will, or to take *dower.* The Act of 1848 affords the legislative construction of the term *dower,* as used in the Act of 1833. It extended its meaning. It construed the section of the Act of 1833, in which nothing is provided in the *case of a partial intestacy.* The Act of 1848 does not provide that she is to have her share of that of which he died intestate (to that she was entitled without the aid of the Act of 1848), but she is to have her share *of the personal estate of her husband.* In the case of Hinnershitz *v.* Bernard's Executors, 1 *Harris* 521, GIBSON, C. J., said, it is obvious the intention was to put it in the widow's power, if she pleased, to have what she would have got had there not been a will.

*Gerhard* and *Chapron* for respondent.—The first section of the intestate Act of 8th April, 1833, provides that the real and personal estate of a decedent, whether male or female, remaining after payment of debts, *which shall not have been sold or disposed of by will,* or otherwise limited by marriage settlement, shall be divided and enjoyed, &c.

The intention of that act was to make the wife's estate free from the claims of the husband's creditors, and to restrict the rights of each over the property of the other.

The Act pretends to construe the Act relating to last wills and testaments, and assumes that the widow has an interest in the personal estate of her husband under the intestate laws. It there says that the Act relating to last wills and testaments shall not be construed to deprive her of those rights. What rights ? Under the intestate laws. Had she any under the intestate laws in the personal property disposed of by will ? The first section of the intestate law declares *that she has not.* It then goes on to say that she may elect to take her bequest under the will or her share under the intestate laws. It is founded on a mistake, viz., that the wife had an interest in the personal property of her husband, under the intestate laws, *when he had made a will.*

As to the object for which the Act of 1848 was passed:

The framers of the Act of 1848 supposed that, under the intestate laws, the widow had an interest in the personal estate of her husband, *undisposed of by will*, and that the Act of last wills and testaments, providing that she should have her election of dower or of the estate devised by will, would deprive her of those rights in case she chose to take her dower; or in other words, that the Act as to last wills and testaments would prevent the operation of the intestate laws on her supposed interests in any personal property of her husband undisposed of by will, and have consequently declared that as to such interests she shall not be deprived of them when she elects to take her dower, but shall retain the same rights as she had under the intestate laws.   Under the intestate laws she had none in any property undisposed of by will, for she had only the interest given to her at the common law by virtue of the marriage contract as to such property; consequently the Act of 1848 was passed to prevent the privation of imaginary interests.

No statute shall be construed so as to be inconvenient and against reason: *Dwarris on Statutes* 726.

The Act of 1848 is unconstitutional, as it respects a marriage contracted before the passage of that act.   It would be taking the husband's property and giving it to the wife.   But the section under consideration would seem, from its provisions, not designed to be retrospective, and hence not applicable to the present case.

The opinion of the court was delivered February 26, by

COULTER, J.—The 11th section of the Act of 1833, relating to last wills and testaments, enacts " that a devise or bequest by a husband to his wife of any portion of his estate or property shall be deemed and taken to be in lieu of and bar of her dower;" " provided that nothing herein contained shall deprive the widow of dower, or of the estate or property so devised."   If the word dower in the proviso is construed to mean dower at *common law*, so also must it be construed in the enacting clause.   It would seem, therefore, that the wife is only barred of her *dower at common law*, if she accepts under the will.   As to any part of the personal estate remaining undisposed of by the will, she would take her purpart or share under the intestate laws, not being barred by the statute, either in its letter or its spirit: In Leinaweaver *v.* Stoever, 1 *W. & Ser.* 160, it was held that the acceptance by a widow of her share under the intestate laws did not bar her from recovering dower of land aliened by her husband in his lifetime.   There is a pretty strong analogy between that case and the present.   The former exhibiting the tendency of our courts to favor the claim of the widow to her full share under our statute

of distribution, if she chose to claim it, irrespective of the claim of her dower at common law. This same tendency was strongly exemplified by a train of decisions anterior to the Act of 1794. It was held that equity would only interfere to bar the widow where the implication, that the testator intended that she should not have dower, and the devise or bequest was so strong and necessary that it could not be resisted, or where, if she took both, it would defeat the whole will: 2 *Dall.* 418; 2 *Yeates* 387; *Addison* 351. And in Evans *v.* Webb, it was said by YEATES, Justice, the venerable father of Pennsylvania Law, that if she takes a larger estate under the will than her dower, it shall not be in bar thereof unless so expressed. The Act of 1794, section 1st, provides, " that the share of the estate of the intestate in this act directed to be allotted to the widow, shall be in lieu and satisfaction of her dower at common law." This act settled what had long been contested, but always decided in favor of the widow by the courts. Under this Act, when she gave up her testamentary right, she stood, as it regarded the devisee of the land, in the light of a purchaser for her share, and not as a mere volunteer. Her right to election was indisputable, under the Act of 1794; and it was ruled in 2 *Yeates* 302, that her election must be by plain and explicit acts, under a full knowledge of the circumstances of her husband, and of her own rights. Then came the Act of 1833, which I have cited, and in which the words appended to " dower," to wit, at *common law*, in the Act of 1794, are dropped. Subsequently the law of 1848 was enacted, the 11th section of which is in substance as follows: " the Act of 1833 shall not deprive the widow, in case she elects not to take under the will of her husband, of her share of the personal estate of her said husband, but that the said widow may take her claim either of the bequest or devise, or her share of the personal estate under the intestate laws." This section is plainly cumulative and in addition to the 11th section of the Act of 1833, and intended to explain it. It certainly could not have been intended to repeal it. The legislature seem to have thought, that by the word *dower* in that section, dropping the addition of the words at *common law*, which were used in the Act of 1794, was meant the *widow's share*, and that she was not confined to dower *at common law*. Hence the Act of 1848; and it is a matter of no consequence whether that Act was a declaratory Act, or an original law, because it was in full operation more than a year before testator's death.

It was vehemently contended at bar, that this Act was unconstitutional, because the rights of the wife are fixed and vested at the time of the marriage; and that this Act alters and changes those rights, and essentially interferes with them as well as with the vested rights of the husband. But we know not where the parties

[Melizet's Appeal.]

were united in wedlock, whether in this State or elsewhere; nor under what law of domicil those alleged rights vested. Here, in this Commonwealth, laws have been passed from time to time, altering our statute of distribution, and altering the manner of making wills. Those laws have been considered sound and good, if in operation at the time of the decedent's death, no matter whose inchoate interests they affected. The legislature might at their discretion annul the common law right of dower, and repeal the statute of wills.

There is no constitutional provision guarding the common law right of dower; it is not part of the marriage contract. It results from wedlock by the operation of existing laws at the time of the husband's death. The act of 1848 is perfectly constitutional; we give it no retroactive operation; it violates no vested right. If the doctrine of the respectable counsel was sustained, it would upset many estates in the Commonwealth.

A doubt has been expressed whether this Act does not confine the election of the widow to the personal estate alone. I cannot entertain such a doubt. But I am instructed by the court to express no opinion as to the real estate. Indeed the proper parties are not before us, that is, the devisees of the realty. It is the executor in his character of executor, representing the personal estate, and the widow, who are the contestants about a matter which does not involve the distribution of the real estate.

But the widow is entitled to elect not to take under the will, in which case she will be entitled to take her share or distributive part of the personalty, beyond all doubt or cavil. And in order that she may be enabled to make that election with a full knowledge of the circumstances of her husband, she is entitled to a fair account of the personal estate by the executor. By petition to the court she impeaches the inventory and account furnished and filed by the executor, which petition is verified by her oath. Her application to the court is under the 22d sec. of the Act of 29th March, 1832, which requires the removal of an executor who does not file a true inventory "upon the application of any person interested. The widow is interested; has a good standing in court, and is entitled to have her cause proceeded in to final judgment on the merits. There is nothing in the objection that the widow did not apply for the appointment of an *examiner*. Our Orphans' Courts do not proceed exactly in conformity with chancery forms. The widow did apply for the appointment of an auditor to examine and report upon the facts involved in the petition and answer. But the court refused to appoint an auditor, and dismissed the petition, because the widow was not a party in interest. In this there was error. I say nothing of facts spoken of in the argument as to property and effects, stocks, &c., which the testator ought to be

considered as possessed of and lawfully owning at the time of his death; all that will depend on the testimony when taken.

The only question strictly before this court, is whether the widow, under the Act of 29th March, 1832, is a "person interested" and entitled to a standing in court under its provisions. We think she is.

Decree reversed and procedendo awarded.