## Hunt Estate

*Robert B. Greer* and *Edward W. Semans*, for petitioners.

VAN RODEN, P. J., December 3, 1959.—This proceeding is based upon a petition filed pursuant to the Uniform Declaratory Judgment Act of June 18, 1923, P. L. 840, 12 PS §841 et seq., as amended. The petition submits the following question for determination:

"Whether the filing of an election by the widow of the decedent, Florence V. Hunt, to take against the Will will by law necessitate or require that she must also take against the assets held by trustees under the terms and provisions of the revocable life insurance trust agreement executed by the decedent on April 16, 1953."

There is no dispute as to the facts, and the following facts appear from the petition filed, the prayer of which petition is concurred in by all the parties in interest. Accordingly, the court makes the following

### Findings of Fact

1. James E. Hunt died a resident of Delaware County, on January 1, 1959, leaving a last will and testament, dated April 16, 1953, and codicil thereto dated March 21, 1956, duly probated in the Office of the Register of Wills of Delaware County. Letters testamentary thereon were granted to Girard Trust Corn Exchange Bank and James E. Hunt, Jr., the executors named in the will.

2. On April 16, 1953, prior to the execution of his will, hereinabove mentioned, decedent, as settlor, executed an unfunded, revocable life insurance trust agreement, or deed of trust, naming Girard Trust Corn Exchange Bank as trustee, but directing that

James E. Hunt, Jr., be an additional trustee upon settlor's death. The trust agreement provided that upon the death of settlor, the trustee, Girard Trust Corn Exchange Bank, would receive the proceeds of the life insurance policies constituting the corpus of the trust, together with any other property that might be added to the trust, such proceeds, transfers and additions being called the principal, and then directed that such proceeds be allocated and held by the trustees in two separate trusts, viz., a trust under article first, titled "Marital Deduction Trust," and a trust under article second, titled "Residuary Trust' for Wife and Children."

The trust under the said article first, the marital deduction trust, directs that such part or all of the principal of the entire trust allocated and held under the said article first as will be exactly sufficient to reduce the Federal estate tax to the lowest possible figure. This trust further provides for the payment of all the net income to the wife of settlor during her lifetime, with an unrestricted power of appointment given to the wife of settlor to direct the distribution of the principal of the trust by her will, with further provisions for the distribution of the principal of the trust in the event the wife fails to exercise her power of appointment.

The trust under the said article second, the residuary trust for wife and children, directs that the residue of the principal shall be allocated and become subject to article second, the net income therefrom to be paid to settlor's wife during her lifetime, and upon her death the principal to be distributed to the children of settlor or their issue.

Article third of the trust agreement, titled "Composition of Marital Deduction Trust," states that the chief object of article first is to secure the full benefit of the marital deduction allowable for Federal estate

tax purposes under section 812(e) of the Internal Revenue Code of February 10, 1939, 53 Stat. 123, as amended, 26 U. S. C. §812, and then provides instructions for determination of the composition of the trust created under article first which will assure that the maximum tax benefit will be obtained.

3. The will of decedent in item first bequeaths all personal effects and belongings to his wife, Florence V. Hunt.

Item second of the will bequeaths all of the funds of decedent on deposit in the Girard Trust Corn Exchange Bank, Savings Department, to the brothers of decedent, or their respective wives.

Item third of the will recites the execution of the deed of trust, the life insurance trust agreement hereinabove described, and refers to article first thereof as a separate trust established for the wife of testator for the purpose of reducing Federal estate taxes falling due at testator's death. It then provides that for the accomplishment of that purpose there is given to the trustees under the trust agreement "as much of my residuary estate as is necessary to carry out the provisions of article FIRST of such Deed, IN TRUST, to treat such part of the residue as an addition to the principal of the trust thereby created." The balance of the "Residuary Estate" is given to the same trustees, in trust, to treat such balance as an addition to the principal of the trust created by article second of the deed of trust.

Item fourth of the will provides that all estate, successsion and other death taxes that may become payable with respect to property forming the gross estate for tax purposes, excluding only the insurance proceeds payable directly to the trustees under the deed of trust "shall be paid out of the balance of my residuary estate passing to the trust created by article second of said deed, and no one having a beneficial

interest in any such property shall be required to refund any part of such taxes."

4. Decedent executed a codicil, hereinabove recited, on March 21, 1956, in which he bequeathed to his four children, James E. Hunt, Jr., George V. Hunt, John J. Hunt and Miriam E. Hunt (now by marriage, Miriam Hunt Gallagher), all stocks, both common and preferred, owned by decedent at the time of his death in equal shares, having an appraised value of $134,-404.38.

5. Prior to his death decedent owned certain policies of insurance, issued by The Prudential Insurance Company of America, under a group policy of his employer, Philadelphia Electric Company. The proceeds of these policies, formerly payable outright to decedent's wife, were, by change of beneficiary executed January 1, 1958, made payable to decedent's wife in installments, providing that any residue remaining at the death of his wife became payable to decedent's four children in equal shares. Upon the death of decedent the proceeds of the said policies amounted to $20,000.

6. Prior to his death decedent also owned a certain policy of life insurance issued by The Prudential Insurance Company of America, the proceeds of which were made payable to decedent's wife, Florence V. Hunt. Upon decedent's death the proceeds of this policy amounted to $5,000.

7. The gross estate of decedent passing under his will and codicil thereto, as shown by the inventory and appraisement filed of record, amounts to $183,-471.70, and the estimated debts and administration expenses amount to $16,500, leaving a net estate of $166,971.70. To determine the adjusted gross estate for Federal estate tax purposes and to compute the maximum marital deduction allowable under the Federal estate tax laws, there is added to the amount

of the net estate the value of all property owned by decedent and his wife as tenants by the entirety, and the value of the proceeds of the life insurance policies, hereinabove recited. The computation of the maximum marital deduction which will reduce the Federal estate tax to the minimum amount, as intended by decedent, is as follows:

| | |
|---|---:|
| Net personal estate ............. | $166,971.70 |
| Add property owned as tenants by the entirety ..................... | 22,387.73 |
| Proceeds of life insurance policies: | |
| Paid outright to wife of decedent . | 5,000.00 |
| Payable in installments to wife of decedent, or his children ...... | 20,000.00 |
| Paid to trustee of life insurance trust agreement ............ | 51,051.83 |
| Total adjusted gross estate ........ | $265,411.26 |
| Allowable marital deduction ....... | 132,705.63 |
| Net taxable estate ............. | $132.705.63 |

Federal estate tax on $132,705.63, less credit for Pennsylvaina inheritance tax is *$12,795.93.*

8. By reason of the change in the manner of payment of the proceeds of the life insurance policies of The Prudential Insurance Company of America to the wife of decedent and the execution of the codicil in which all stocks of testator are bequeathed to the children, the marital deduction allowable for Federal estate tax purposes will be reduced, thus increasing substantially the Federal estate tax due and payable.

9. Under the provisions of the life insurance trust agreement and the will, the entire present principal of the life insurance trust agreement, namely, $51,-

051.83, is allocated and subject to article first thereof, viz., allowable for computing the marital deduction.

10. Petitioners are informed that by the filing of an election to take against the will of her deceased husband, Florence V. Hunt will receive one-third of the gross personal estate, hereinbefore recited, less one-third of the debts and administration expenses, which, when added to other property allowable for computation of the marital deduction, will permit the allowance of the maximum marital deduction, as intended by decedent, provided that the filing of such election will not by law affect the rights, interests and powers of Florence V. Hunt in the present principal of the life insurance trust agreement, viz., result in and necessitate the award to her of one-third of the present principal of the life insurance trust agreement, in lieu of the rights, interests and powers held by Florence V. Hunt over the present principal of the trust, pursuant to article first thereof.

## Discussion

The purpose of the determination of this question is to assure to the widow and to the children of decedent whose interests in the assets of the life insurance trust will be affected, that the filing of an election to take against the will shall accomplish the desired result, viz., to effect a substantial reduction in the Federal estate tax payable by this estate.

At the time of the execution of the life insurance trust agreement and the will, the dispositive provisions of both instruments and the life insurance policies effected the intentions of decedent. However, the execution of a codicil by decedent on March 21, 1956, in which he bequeathed to his four children all of his stocks, and the change made by decedent in the manner of payment of the proceeds of a certain life insurance policy to his wife disqualified these

assets from allowance in computing the marital deduction. The result and effect of the above changes made by decedent are apparent from an examination of the computation of the maximum marital deduction, which is set forth supra in paragraph 7 of the findings of fact, viz., the deduction from the adjusted gross estate of the value of the stocks amounting to $134,404.38, plus the proceeds of the life insurance policy payable in installments to the wife and children of decedent in the amount of $20,000, for the purpose of computing the marital deduction. By taking against the will, the widow will thereby receive outright one-third of the whole personal estate, which will qualify for the marital deduction, in addition to the proceeds of the life insurance policy in the amount of $5,000, payable to her outright, the value of property owned as tenants by the entirety, in the amount of $22,387.73, and the proceeds of the life insurance policies paid to the trustee of the life insurance trust, in the amount of $51,051.83, which also qualify for the marital deduction. However, it is argued that the purpose of the filing of an election to take against the will would be defeated, if the widow is thereby *required* to take against the assets held under the life insurance trust agreement, and thus disqualify two-thirds of those assets from allowance in computing the marital deduction.

It is true that under similar circumstances the benefit of the marital deduction has been obtained, in whole or in part, by the widow of a decedent filing her election to take against the will.

Counsel for petitioners suggest that the specific question has never been directly ruled upon, to wit: Whether under the Pennsylvania statutes and decisions in effect at the time of the death of decedent, the filing by the widow of an election to take against

the will does or does not require or necessitate that she must also take against the assets held under the life insurance trust agreement.

We are aware of the decision in Brown Estate, 4 D. & C. 2d 722, affirmed per curiam by the Supreme Court in 384 Pa. 99 (1956). In that case the then applicable statute was the Estates Act of April 24, 1947, P. L. 100, as originally enacted, and the court held that a life insurance trust was testamentary and that a widow who filed her election to take against the trust was entitled to one-half of the assets.

With the definite intention of changing the law as promulgated by this judicial interpretation of the effect of the Estates Act of 1947, the legislature enacted the amendment of February 17, 1956, P. L. 1073, 20 PS §301.11.

However, the ambiguity of the language used in the amendment of 1956 became apparent and thereupon, quoting from the opinion of the Supreme Court in Henderson Estate, 395 Pa. 215, 225 (1959):

". . . the Estates Act of 1947 was further amended on July 11, 1957, in order to make clear that such acts [the creation of unfunded revocable insurance trusts] were not testamentary. This was accomplished by adding a new section:

" 'Section 8. Designation of Insurance Beneficiaries Not Testamentary.

" 'The designation of beneficiaries of life insurance shall not be considered testamentary, regardless of whether the insurance contract designates the ultimate beneficiaries or makes the proceeds payable, directly or indirectly, to a trustee of a trust under a will or under a separate trust instrument which designates the ultimate beneficiaries, and regardless of whether any such trust is amendable or revocable, or both, or is funded or unfunded, and notwithstanding

a reservation to the settlor of all rights of ownership in the insurance contracts.' The Joint State Government Commission made the following comment: 'This section would replace section 8 of the Estates Act which was omitted when the rule against accumulations was changed. It has two purposes. The most important is to make it clear that unfunded insurance trusts *are not testamentary* and to that extent the law as stated in Brown Estate, 384 Pa. 99, is changed . . .' "

The effective date of this amendment is July 11, 1957.

We are aware of only one reported decision interpreting the provisions of section 8 of the Estates Act of 1947, as amended by the Act of July 11, 1957, P. L. 792, 20 PS §301.7a. This is Henderson Estate, supra. We are fortunate to have the benefit of this opinion of the Supreme Court, which reviews exhaustively the history of the statutes and decisions of our courts in relation to life insurance policies in general and, in particular, the rights which a widow may obtain in the proceeds of such policies paid to the trustee of an inter vivos insurance trust, upon filing an election to take against the will of her deceased husband and the assets of insurance trusts, and which discusses the decision in Brown Estate, supra.

In the Henderson case decedent died November 9, *1957*, leaving a will dated October 28, *1957*, in which his residuary estate was left to his wife for life. He also owned three policies of life insurance, and at the time of his death the widow was not a beneficiary thereof. On February 13, *1952*, Henderson executed an unfunded revocable life insurance agreement, the only asset of which was one policy in the amount of $85,000, in which his wife was originally named the beneficiary. After several changes in the

beneficiary, the bank-trustee was named the beneficiary, and the trust agreement was again amended on October 28, *1957*. The wife had never been included as a beneficiary of the trust. Following Henderson's death on November 9, *1957*, his widow filed an election to take against his will and also against the life insurance trust under section 11 of the Estates Act of April 24, *1947*, P. L. 100, 20 PS §301.11.

In upholding the decision of the Orphans' Court of Philadelphia County in Henderson Estate, the Supreme Court's opinion included the following:

"The Legislature may create or modify or destroy a wife's statutory right to take against her husband's will during the life of the spouse, but not after the spouse's death: Crawford Estate, 362 Pa. 458, 464-465, 67A. 2d 124; Melizet's Appeal, 17 Pa. 449; Moninger v. Rittner, 104 Pa. 298; Scaife v. McKee, 298 Pa. 33, 148 A. 37": page 220.

"The trustee was a mere custodian, the trust was a mere shell. When the trust was created in 1952 or amended in 1953, it was a 'conveyance of assets' within the meaning of §11 of the Estates Act, and under Brown Estate, supra, the widow would have been entitled to one-half of this unfunded insurance trust under her election to take against her husband's will and against this conveyance, if no changes had been made by the above mentioned Legislative Acts of 1956 and 1957, and by the settlor himself in October 1957. However, on October 28, *1957*, Henderson amended this insurance trust by changing the beneficiaries and their rights and interests thereunder—after the Legislature had clearly stated (a) in 1956 that a spouse's right to take against the will and against a conveyance of assets should not apply to any contract of life insurance purchased by the decedent, whether payable in trust or otherwise; and

(b) in 1957 that the designation of beneficiaries of life insurance shall not be considered testamentary regardless of whether the proceeds were payable to a named third party individual or to a testamentary trustee, or to an inter vivos trustee, and regardless of whether the trust was amendable or revocable or both, or funded or unfunded.

"The persons who were named by Henderson on October 28, *1957*, as beneficiaries under the provisions of this insurance trust acquired whatever rights they had at that time. Since the trust was merely a revocable shell, they acquired only an expectancy. *However, even under the Estates Act of 1947, Henderson's widow had no vested rights therein prior to his death. Whatever rights the widow might have therein arose only upon the death of the insured; and she then acquired only such rights as the Legislature chose to give her by statute, and these statutory rights could, as we have seen, be changed or modified or increased or destroyed by statute.* While this unfunded insurance trust was a 'conveyance of assets' within the meaning of §11 of the Estates Act of 1947, it is clear (1) that under §11 (a) of the Estates Act, which was effective as of April 1, 1956, a widow's right to take against her husband's will and against a conveyance of his assets did not include and was not applicable to any contract of life insurance purchased by a decedent whether payable in trust or otherwise; and (2) that under §8 of the 1957 Amendment of the Estates Act of 1947 *Henderson's unfunded insurance trust was not testamentary.* It follows that Henderson's widow has no rights in his inter vivos unfunded insurance trust and no rights in or to any of the proceeds of the the life insurance policy which was included in the inter vivos trust which Henderson created in 1926 and *amended in 1957.*" (Italics supplied) : page 227.

It is pointed out, of course, that the Supreme Court based its decision on both the fact that Henderson amended the deed of trust in that case, *after* the enactment of the Act of July 11, 1957, *and* that whatever rights the widow might have in the deed of trust arose upon the death of the insured, and were limited to such rights as the legislature chose to give her by the statutes in effect at that time. However, the court repeats that the widow had no vested rights in the insurance trust, even under the Estates Act of 1947, as originally enacted, because those rights could be (and were) "changed or modified or increased or destroyed by statute."

It is unfortunate that the Supreme Court in Henderson Estate did not separate its findings and specifically hold that the decision would have been the same, even though the amendment to the deed of trust was not made after the enactment of the Act of July 11, 1957, supra, in which case the instant proceeding would have been unecessary. However, the court's opinion does serve to affirm the law applicable to decedents dying after the passage of the amendments to the Estates Act of 1947, namely, the Act of February 17, 1956, P. L. 1073, supra, and the Act of July 11, 1957, P. L. 792, supra.

There is no statutory mandate requiring a spouse to take against a will or to elect to take against the provisions of an inter vivos deed of trust. Such election is the privilege of a choice granted to the surviving spouse of a decedent, which statutory provision is peculiar only to a surviving spouse. We might note that any such "overflow" of pecuniary assets from the estate into the marital trust provided by the trust deed in the instant case will have been accomplished before the widow's share of the estate has been determined. The fact that there may be a possible "overflow" of assets from the estate of decedent into

the corpus of the marital deduction trust cannot alter the situation.

## Conclusions of Law

1. Florence V. Hunt, the widow of James E. Hunt, deceased, is entitled to the distributive share of her husband's estate as provided by statute in accordance with her election to take against the will of decedent.

2. The widow is, in addition, entitled to receive the benefits provided for her by the provisions of the life insurance trust created by decedent.

3. Decedent having died January 1, 1959, the Act of July 11, 1957, amending the Estates Act of 1947, governs the rights of the widow and the effect of the filing by her of an election to take against the will of her deceased husband.

4. The filing of an election by Florence V. Hunt, the widow of decedent James E. Hunt, to take against the will of decedent does not necessitate or require that she must also take against the assets held by the trustees under the terms and provisions of the revocable life insurance trust agreement executed by decedent on April 16, 1953.

## Decree

And now, this December 3, 1959, this matter having been submitted to the court upon petition accompanied by a joinder of the parties in interest, and after argument,

It is ordered, adjudged and decreed that the filing by the widow of her election to take against the will of decedent does not give her any rights or interest in the life insurance trust. Conversely, the filing of such election does not necessitate or require that this widow take against the assets of the insurance trust, nor will her interest and rights in that trust be changed or affected in any way.

The costs of this proceeding shall be paid by the estate.